## SUPERIOR COURT OF BALTI-MORE CITY

Filed January 15, 1895.

JOHN C. SHARP, ET AL.,

VS.

ALFRED E. SMYRK.

Messrs. *Wm. A. Fisher* and *Arthur George Brown* for petitioners.

Mr. *Thomas G. Hayes* for respondent.

DOBLER, J.—

By Ordinance No. 100, approved October 7, 1892, among other provisions, $1,600,000 of the six million dollar loan authorized by the Act of 1892, Chapter 138, was set apart "for paying the cost of repaving with improved pavements such streets in Baltimore City, the repaving of which shall be required by ordinance of the Mayor and City Council of Baltimore." This ordinance having been submitted to the voters of the city at the election held November 8, 1892, was duly approved. From the 21st day of February to the 1st day of May, 1893, twenty-three ordinances were duly passed by the City Council and approved by the Mayor providing for repairing various streets, in nineteen of which ordinances specific sums of money were appropriated, said sums "to be taken out of the sum of $1,600,-000 of bonds set apart under Ordinance No. 100 for repaving streets with improved pavements, and in four of which ordinances no specific sums were appropriated, but the cost was to be taken out of the sum of money "set apart to be used for paying the cost of repaving streets with improved pavements in the Ordinance No. 100,

above-mentioned, and in one of these last-mentioned repaving ordinances (No. 79) for repaving Broadway from Preston street to North avenue recourse is to be had to any balance that may remain of the money appropriated by Ordinance No. 15, approved February 27, 1893, after repaving Gay street, as contemplated. No work on any of the streets was done prior to May 1, 1893. Upon that date there had been appropriated in various specific sums $1,474,-500, and direction had been given for other repaving, on account of which there has been expended by this time $208,820.54. Work on Broadway north of Preston street has not yet been begun. Making reasonable allowance for excessive estimates, it will be seen that when the work of repaving under the twenty-three ordinances passed by the 1st of May, 1893, began the entire $1,-600,000 set apart under Ordinance No. 100 had been appropriated by the Mayor and City Council.

The execution of the ordinances for repaving streets developed upon the City Commissioner, who, after consultation with the Mayor, felt at liberty to make contracts and pave streets without regard to the order in which the several ordinances were enacted, and meanwhile the Mayor and City Council from time to time passed other ordinances providing for the repaving of other streets, and appropriated various other specific and also indefinite amounts of money to be taken out of the same $1,600,000 set apart under Ordinance No. 100, above mentioned. Certain streets mentioned in the latter ordinances have been paved, as well as streets mentioned in the ordinances enacted prior to May 1, 1893. It has now come to pass that appropriations for repaving streets have been made to the amount of about $2,244,489.95 to be paid out of the $1,600,000 set apart and provided therefor under said Ordinance No. 100, and that some sixteen or eighteen streets have yet to be paved, the cost of which will be $650,-000, and that there remains but $132,-076.05 available for the purpose.

Ordinance No. 42, approved March 16, 1893, appropriated $62,000 to repave Saratoga street from Cathedral street to Fremont. Work has begun thereunder on the 12th of June and ended August 8, 1893. The expenditure to January 1, 1895, was $51,930.70. leav-

ing a balance unexpended of $10,069.30. Against this latter amount there is, however, outstanding a paving certificate for $6,017.70, bearing interest at six per cent. Ordinance No. 102, approved May 1, 1893, appropriated $8,000 to repave Calvert street, from Biddle street to Preston street. Work was begun September 23, 1893, and appears to have been ended September 30, 1893. It cost $4,830.82, leaving an unexpended balance of $3,179.18. There is no outstanding paving certificate in this case.

An ordinance entitled "An ordinance to provide for the repaving with asphalt blocks of Saratoga street, from the west side of Fremont street to the east side of Carrollton avenue, or so much of Saratoga street as the surplus ascertained to have been derived from Ordinance No. 42, approved March 16, 1893, and No. 102, approved May 1st, 1893, shall be found to cover the cost of * * *, was passed by both Branches of the City Council, and was sent and presented to the Mayor for his approval on the 5th day of June, 1894. The City Council had adjourned from the 28th day of May, 1894, until the 24th day of September, 1894. However, by proclamation of the Mayor, in accordance with the authority conferred upon him by the Constitution and laws of the State, the City Council was convened on the 27th day of June, 1894, in extra session. This extra session lasted three legislative days, to wit: June 27, June 28 and July 2. The regular session of the Council was resumed on the 24th of September, upon which date both Branches adjourned to meet September 27th, and upon the latter day they adjourned sine die. The Mayor neither approved nor vetoed the ordinance in question in these proceedings.

The petitioners are citizens and taxpayers of Baltimore, and owners of property binding on that part of Saratoga street directed to be repaved by the ordinance in question. They have demanded of the City Commissioner that he proceed to advertise for proposals under the ordinance, and that he shall thereafter proceed to do the other acts mentioned in said ordinance. He has refused and now resists the issuing of the writ of mandamus principally on the grounds: 1st. That the ordinance has not been legally enacted because the City Council adjourned be-

fore the expiration of five days from the day said ordinance was presented to the Mayor for approval. 2. That there is no money available to meet the expense of carrying out the ordinance, if valid. 3rd. That he has a discretion as to the time in which to carry out the ordinance; and, if not, that when the demand was made upon him, the force in his office was not sufficient to enable him to execute the ordinance, and that midwinter was an inappropriate time to do the work required under the ordinance.

1. It is contended on the part of the respondent that the session of the City Council convened by the proclamation of the Mayor was a special session, called for the sole purpose of considering the specific matters set forth in the proclamation and in the subsequent communications of the Mayor. Neither the Constitution of the State nor the City Charter impose any limitation upon the City Council when convened in extra session, except that the duration of the session shall not exceed twenty days. The legislative powers of the Council are not dependent upon the Mayor's proclamation. The right of the Council to control its legislation during the extra session is complete. Since there is no reason why it should not be ready to consider when in extra session, the Mayor's reasons for withholding approvals of its ordinances (indeed during this very extra session the Mayor did submit his veto of an ordinance passed at the regular session, and the City Council did act upon his veto message,) the days in which the Council and the Mayor, in his legislative capacity approving or disapproving ordinances, are engaged in an extra session must be taken into account in determining the time allowed to the Mayor for consideration of ordinances submitted for his approval. Five full legislative days, to wit, June 27, June 28, July 2, September 24 and September 27, having passed since the ordinance in question had been sent and presented to Mayor Latrobe for his approval, and the same having neither been approved by him nor returned with his reasons therefor in writing, it then became, and now is an ordinance of the Mayor and City Council of Baltimore to all intents and purposes.

524

2. It has been shown that there remain unexpended balances from the appropriations under Ordinances Nos. 42 and 102. It also appears from the evidence that there is no unexecuted ordinance later in date than the ordinance in question in these proceedings, and that no ordinance passed since the 1st of May, 1893, directly referred to the specific balances above mentioned. No canon of construction has been suggested that would prevent the application of these balances to the purposes of this ordinance. It has been the uniform practice of the city authorities to regard such balances as the objects of specific legislation and specific appropriation. Such balances are not transferred without legislative direction. This last expression of the legislative will must be construed as a dedication of these balances to the purposes of this ordinance.

3. The testimony shows the City Commissioner had more than sufficient office force on the 14th of January, 1895; to discharge all the duties then required of him under this ordinance. There is nothing connected with the weather in the months preceding the season for repaving streets to hinder the advertisement for proposals, nor to prevent, after bids may have been received, the award of a contract to pave streets as soon as the paving season shall open.

There are certain minor details in the matter of executing all such ordinances that are left to the judgment of the City Commissioner, such as selecting the two newspapers in which the advertisements are to be inserted, determining who may be the lowest responsible bidder, and fixing the form and terms of the contract. As to these matters the judgment and discretion of the City Commissioner will not be coerced.

The ordinance in question requires the City Commissioner to execute it in a prescribed way. He is not vested with authority to determine whether the public interest requires him to delay its execution.

He has refused to execute the ordinance upon the ground above stated. These grounds have been shown to be untenable.

The prayer of the petitioner is that the City Commissioner be required to advertise and to award the contract as provided for in the ordinance. The writ compelling him to execute the ordinance and to discharge his duties thereunder, will not interfere with the lawful exercise of any discretion that may have been given to him under the ordinance.

The rule will be made absolute and it is hereby ordered that the writ of mandamus issue as prayed.